# S E A L E D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Cr. No. 04-10054-NG |
| ) | |
| GARY J. MILO, ) | |
| Defendant. ) | |

GERTNER, D.J.

**ORDER RE: RULE 35(a) MOTION FOR RECONSIDERATION**
**June 15, 2006**

## I.   INTRODUCTION

The government moves under Fed. R. Crim. P. 35(a) to "correct the sentence pronounced orally by the Court on May 31, 2006," in the case of United States v. Gary Milo. The government's motion is not only without merit; it is disingenuous. It mischaracterizes the basis for the sentencing of Mr. Milo, and, worse yet, it fails to include salient facts. To read it, one would imagine that the government was blind-sided by a judicial departure ground or approach about which it knew nothing.

Nothing could be further from the truth. In fact, the government moved for a departure under U.S.S.G. § 5K1.1 on account of Mr. Milo's cooperation. Absolutely nothing about the sentencing hearing should have surprised government counsel. The sentencing concerned the extraordinary nature of Mr. Milo's

cooperation as described in the government's presentation.  But it also concerned the extent to which Mr. Milo had changed his life, the steps he had taken in his work, steps which effectively increased the amount of money the government was likely to recover on forfeiture, and his exemplary work with Habitat for Humanity.  All of these facts had been discussed by counsel prior to the hearing and were embodied in documents shared between them -- no surprise there.

The only thing surprising about this sentencing process is the government's Rule 35(a) motion. If the government is unhappy with the magnitude of the downward departure for this cooperating defendant, it can appeal rather than filing meritless motions.

**II.  DISCUSSION**

The government's motion purports to be brought under Fed. R. Crim. P. 35(a) to "correct" the sentence.  Rule 35(a) provides, "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Id.

The first "clear error" which this motion is designed to "correct" is the fact that the Court compared Mr. Milo to Robert Modugno, "a defendant in an unrelated cocaine case from 2000." According to the government, "[t]hat comparison constituted a clear error which the government requests that this Court correct."  The government charges that the Court compared Mr.

Milo with Mr. Modugno in an attempt to harmonize sentencing as between "similarly situated defendants" in wholly unrelated cases, i.e. comparing role in the offense, scope of the misconduct, criminal record, etc.  Indeed, the government indignantly suggests that it was clear error to compare Mr. Modugno without "full disclosure and review of all the relevant facts leading to the sentence of the defendant to which the defendant under consideration is compared."

The government's position inaccurately portrays the actions of the Court.  Contrary to the government's assertion, the Court did not attempt to harmonize the sentences of disparate defendants when sentencing Milo.  Nor did the Court review the case of Modugno for the purpose of eliminating "disparity among local defendants."

The Milo sentencing was about contrition, in addition to cooperation.  It was about the extent to which the defendant not only made a rational bargain to cooperate with the government, but was genuinely remorseful and had changed his life (addressing his addictions, working for Habitat for Humanity, etc.).

To be sure, the government regularly presents cooperating defendants to the Court who have done nothing more than make a business arrangement with the government, not unlike the business arrangements they made in their past life.  They are hardly sorry for what they have done, and they are not cooperating with the

government for the purposes of ridding the streets of criminals. All they have decided is that it is now rational for them to trade the identities of their co-defendants just as they believed that it was rational for them to deal drugs.

Milo was different. His counsel said that in 31 years of practicing law he had known only two defendants who had begun to cooperate immediately, and who "turned their back completely on their prior life styles," far beyond simply "cooperating" with the government. These two defendants were Milo and Robert Modugno. Counsel was not saying that it was somehow unfair for Milo to get a longer sentence than Modugno when they were equally contrite. He was not trying to quantify degrees of contrition -- as if it were the same as one's role in the offense or the quantity of drugs. He was not making a point about disparate punishments for similarly situated defendants. It was a generic, if not hyperbolic, comparison, trying to illustrate the difference between the defendants who cooperate just to get a break, and those who actually change their lives. He was saying nothing more than: "Remember X who genuinely turned his life around? This guy is like him."

When I agreed that the evidence showed real contrition and real change on the part of Milo, I was not remotely attempting to harmonize the sentences of different defendants, in different cases. I considered the distinction counsel was making only to

highlight the argument that more than a simple sentencing reduction for cooperation was warranted.[1]

In any event, as the government well knows, if it wanted more time to address this point, I plainly would have given it. (Indeed, a complex issue arose with respect to the amount of money to be forfeited by Milo. I gave the parties the option to continue the hearing and sort out the issues. The government declined.)[2]

No one asked to present more information, beyond the lengthy affidavit the government filed about the nature of Milo's cooperation, its timing, and the evidence presented by the defense from people involved with Milo in Habitat for Humanity, evidence of the fact that he was finally dealing with his addictions, evidence of a lawful business, and evidence of the considerable amount of money he was likely to have to forfeit (i.e. nine million dollars). In balance, the evidence buttressed counsel's conclusion that this "is someone who the Court will never see again."

---

[1] In fact, when pronouncing sentence I referred to the sentencing that had taken place before the Milo sentencing, that of United States v. James Sardina, Jr., 03-cr-10298-NG. I noted that Sardina had been involved in crime all of his life, had been in and out of jail. In contrast, that life seems to be finally and completely over for Milo. I was not attempting to address disparity issues; I was simply highlighting the difference between the defendant before me and others I had seen.

[2] The parties agreed that the Court could enter the same amount as in the preliminary order of forfeiture, nine million dollars, subject to reconsideration within 30 days of the sentence. In so doing, the parties waived their rights under Fed. R. Crim. P. 32.2, to having the order of forfeiture announced contemporaneously with the sentence.

The second "clear error" cited by the government is about notice, that the Court "deviat[ed] for a reason for which it gave the government no advance warning," namely "deviation based on disparity among local defendants." The government had the temerity to cite to Burns v. United States for the proposition that "Congress did not intend district courts to depart from the Guidelines sua sponte without first affording notice to the parties." 501 U.S. 129, 136 (1991).

Departing sua sponte? *The Milo sentencing was a result of a § 5K motion by the government (a fact not mentioned anywhere in this Rule 35 motion).* The Court failed to notify the government that the real contrition of the defendant would be an issue? If that is a surprise to the government then it should fundamentally reexamine its sentencing approach.

Despite the government's position, the sentencing of a cooperating defendant necessarily involves more than an evaluation of what the government says the defendant's cooperation is "worth." It involves consideration of the Sentencing Guidelines as well as the factors under 18 U.S.C. § 3553(a).[3] In recognition of the complexity of the decision, the

---

[3] Indeed, the Commission acknowledged that it had scant guidance from Congress in fashioning the "Substantial assistance" guideline. See Linda Drazga Maxfield and John H. Kramer, Substantial Assistance: An Empirical Yardstick Gauging Equity in Current Federal Policy and Practice 2-3 (1998), available at http://www.ussc.gov/publicat/5kreport.pdf. And in interpreting the vague guideline the Commission noted "[t]he directive to the Commission to reward offenders for cooperating in the investigation or prosecution of other offenders must be viewed within the overall goal of establishing fair and

Guidelines gave considerable "latitude" to the sentencing judge." U.S.S.G. § 5K1.1, comment. (backg'd.). I am not supposed to say, "If the United States Attorney's office says so, it must be so." While I surely consider the fact that a "committee" of the United States Attorney's office made the decision to offer Milo a fifty percent discount from the Guideline range in this case (see Sentencing Memorandum, dated June 15, 2006), the "committee's" recommendation is not – and should not be – dispositive.

The committee, after all, is not confirmed by the Senate. It is not the functional equivalent of an Article III judge. Its deliberations are not as public and accountable as mine are. It is not required to give notice to anyone as to why it came to the positions it did, with whom it compared Milo, or what "discounts" others who are similarly situated have gotten. I would not be performing my constitutional function if all I did was affirm the "committee."[4]

**SO ORDERED.**

**Date:  June 15, 2006              /s/NANCY GERTNER, U.S.D.J.**

---

honest sentencing. "  Id. at p. 20.

[4] This is especially so given the concerns that the Commission has raised about the impact of 5K1 departures on national disparity, and further, the possibility, albeit based on less than complete data, that inappropriate considerations play a role in these motions.  Id. at 11.