```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )
                              )
     v.                       ) Criminal No.  04cr10054-NG
                              )
GARY JOSEPH MILO,             )
     Defendant.               )
```

GERTNER, D.J.

### MEMORANDUM AND ORDER RE: RE-SENTENCING
December 31, 2008

## I.   INTRODUCTION

This is a re-sentencing of defendant Gary Joseph Milo ("Milo") who was charged with conspiracy to possess with intent to distribute and conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846. Milo's sentencing, as described below, was unique in a number of respects.  He was sentenced to time-served, which was 18 days in detention, five years of supervised release with the first six months to be served in a community detention facility, a $50,000.00 fine and forfeiture in the amount of over nine million dollars.  The First Circuit remanded the case for a more complete explanation of the basis for the sentence. United States v. Milo, 506 F.3d 71 (1st Cir. 2007).  The Court expressed concern that where a "minimal prison sentence" was imposed in a major drug offense, where the district court varied from the government's recommendation for a sentencing reduction based on "substantial assistance," and where

the public may well have difficulty understanding the outcome, a district court was obliged to provide a more complete explanation of its sentence.  This memorandum provides the required explanation.

Although the Court chose not to impose additional imprisonment, Milo's punishment was not simply a "minimal prison sentence."  To the contrary, the supervised release conditions imposed are onerous, and the forfeiture requirements substantial. The government's sentencing recommendation based on Milo's substantial assistance, 75 months or half of the Guideline sentence, was not grounded in any clear standards or principles that could be reviewed by the Court; it was simply a number generated by an unidentified committee in the United States Attorney's Office with little explanation or context.  As a result, there was no reason to give more credence to that number rather than the Court's considered judgment under 18 U.S.C. § 3553(a).  Finally, the public can readily understand the sentencing of a non-violent offender, with no prior record, when the facts of this unusual case are clearly presented and the available alternatives to incarceration considered.

## II.  DISCUSSION

Milo was arrested in Ft. Lauderdale, Florida, on December 17, 2003.  He was charged with conspiracy to possess with intent to distribute and conspiracy to distribute marijuana, in

violation of 21 U.S.C. § 846.  He was subsequently transferred to the District of Massachusetts, where he was released on pretrial conditions.  Milo has remained on release for the past five years, through his initial sentencing, the subsequent appeal, and the re-sentencing.  Not only has there been no violation of the terms of his pretrial release, with one exception at the beginning of that period,[1] but Milo has succeeded well beyond expectations on all fronts.

Although the scope of Milo's offense was considerable and involved a substantial quantity of marijuana, he cooperated almost immediately and did so to an extraordinary degree, as the government acknowledged.  The details of Milo's cooperation are provided in sealed submissions by the government and remain confidential.  Given the scope and magnitude of this assistance, the government filed a motion for a reduced Guidelines sentence, U.S.S.G. § 5K1.1, and a sentence below the mandatory minimum, 18 U.S.C. § 3553(e).

The initial sentencing took place on May 31, 2006, after the United States Supreme Court's decision in <u>Booker v. United States</u>, 543 U.S. 220 (2005), but before its decision in <u>Gall v. United States</u>, 128 S. Ct. 586 (2007).  The Pre-Sentence Report calculated the mandatory minimum sentence as 10 years, 21 U.S.C.

---

[1] While under supervision, Milo tested positive for cocaine on one occasion some three years ago.  Pre-Sentence Report ¶ 4.

§ 841(b)(1)(A)(vii), and the Guidelines range as 151 to 188 months.  The calculation reflected a base offense level of 34, based on a drug quantity of 6,000 kilograms of marijuana, and no prior criminal history.  A three-level upward adjustment for role in the offense, because Milo had directed others to transport marijuana and drug proceeds, was offset by a reduction for acceptance of responsibility.  U.S.S.G. §§ 3B1.1(b), 3E1.1.

The government proposed a sentence of 75 months, approximately half of the Guidelines minimum as calculated by the probation officer.  The Assistant U.S. Attorney reported that this number comported with the recommendations of the committee that the United States Attorney's Office ("USAO") convened to evaluate substantial assistance departures.  No further information was given by the government as to the basis for that number, the composition of the committee, or the standards it used.

Defense counsel countered that recommendation with substantial evidence of the work that Milo had been doing since the date of his release.  The record described Milo's efforts on behalf of Habitat for Humanity and other charitable endeavors; it portrayed Milo as a "caring and decent person, helpful to others."  Milo, 506 F.3d at 73 (providing details).  The many letters expressed confidence that Milo would never repeat his crime.  Indeed, at sentencing, Milo's counsel, an experienced

attorney, said that he had seen few examples of such complete remorse and urged that Milo be given no additional time in prison beyond the period of his initial detention.  Milo's elocution about his contrition and the work he had done to change his life more than supported defense counsel's arguments.  While the prosecutor agreed that Milo helped the government "in significant and important ways," she reiterated that the government's recommendation was based on the scope of Milo's offense and the judgment of the internal committee convened by the United States Attorney's Office.

    I sentenced Milo to time-served, which was 18 days in detention, five years of supervised release with the first six months to be served in a community detention facility, and a fine of $50,000.00.  In addition, he was subject to a forfeiture in the amount of $9,967,500.00.  The sentence was based on a number of factors.  First, Milo's contrition and extraordinary rehabilitation:  Too often, the Court noted, defendants bargain and cooperate with the government in a kind of "business arrangement" not unlike their illegal business dealings.  Milo, however, stood out as defense counsel described, as the prosecutor conceded, and as the Court observed -- as someone who was genuinely remorseful.  That fact bears directly on Milo's likelihood of re-offending.  Second, Milo's cooperation:  The Court noted the extraordinary nature of Milo's cooperation as

described in considerable detail in the government's sealed presentation. While Milo was able to cooperate as substantially as he did because of his level of participation in the drug conspiracy, it was also true that his efforts for the government went far beyond the usual efforts. Third, Milo's work: The Court noted the magnitude of Milo's forfeiture and the significance of his work -- not only his charitable work, including work for Habitat for Humanity, which was considerable, but also his real estate business -- which increased the amount of money the government was likely to recover on forfeiture.

The government appealed. In a decision dated October 30, 2007, the First Circuit vacated the sentence and remanded for re-sentencing after holding that the Court's reliance on the defendant's cooperation and contrition did not satisfy the "plausible explanation" required under <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), <u>cert. denied</u>, 127 S. Ct. 928 (2007). Although the decision appears to be based on substantive reasonableness grounds -- namely, the First Circuit's objection to the "near zero" sentence Milo received[2] -- the Court ultimately framed its remand as the result

---

[2] "The need to deter others is under federal law a major element of criminal sentencing, 18 U.S.C. 3553(a)(2)(B). Given that objective, we do not see how, taken alone, or combined with the other factors described above, contrition could justify a judge in imposing what is effectively no prison time on someone like Milo who, without duress and simply for personal gain, operated a major marijuana ring involving a number of individuals over an extensive period and resulting in the distribution of thousands of pounds of

of a procedural defect, the failure to adequately explain the basis for the sentence.  In essence, where a "near zero" prison sentence was imposed in a major drug case based on cooperation, where the district court varied widely from the government's recommendation, and where the public may well have difficulty understanding the lack of any "real prison sentence" in a case like Milo's, the district court should provide a more thorough account of its sentence.

There is no question that this Court's initial explanation of its sentence left something to be desired.  While this Court regularly writes sentencing opinions rather than relying on an oral recitation and a transcript, and has done so even pre-Booker, it did not do so in this case.  This memorandum is an effort to remedy that situation.

First, the defendant's cooperation and the prosecutor's recommendation: The First Circuit noted that while the district court is not bound by the government's recommendation as to how much of the reduction is proper for substantial assistance, a "prosecutor's judgment as to the right discount, if not impeached, is worth careful attention."  Milo, 506 F.3d at 78.  Here, the court of appeals quoted published national data on the distribution of 5K1.1 reductions, which identified a median reduction of 40 months or 43.5 percent below the Guidelines

---

marijuana." Milo, 506 F.3d at 76 (footnote omitted).

minimum.  Id. (citing U.S. Sentencing Commission, 2006 Source of Federal Sentencing Statistics, tbl. 30); see also 2005 Source of Federal Sentencing Statistics, tbl. 30 (reporting a 5K1.1 median reduction of 38.5 months or 46.2 percent below the Guidelines minimum).  The prosecutor's recommendation, it concluded, was in-line with those reductions.

The problem with giving the prosecutor's recommendation "careful attention" is that the Court has no way of knowing what it is based upon.  District courts have to write opinions, justify their work, and are subject to appeal, as here.  In addition, their sentencing record is monitored by the United States Sentencing Commission.  Prosecutors' decisions and recommendations, by contrast, come with little transparency or explanation.  In this case, the Assistant U.S. Attorney could provide no guidance to the Court besides the number itself -- that is, the USAO committee's 75-month recommendation.  She offered no details about the committee's decision-making process, the reason this particular reduction was selected, or comparable defendants and the reductions they received.  The Court was asked to accept, with little scrutiny, the recommendation made by what is effectively a black box.

In much the same way, attempts to study substantial assistance departures have often run aground for lack of

information.[3] Moreover, to the extent that substantial assistance policies have been studied, they reveal inconsistencies from office to office, leaving the aggregate national statistics cited by the court of appeals less relevant in any specific case. See Maxfield & Kramer, Substantial Assistance, supra note 3, at 7-9 (finding inconsistencies in the U.S. attorneys' office policies on substantial assistance departures, and also finding that while roughly 68 percent of defendants provided assistance to the government in some form, only about 39 percent received a substantial assistance departure); see also Memorandum from Linda Drazga Maxfield, U.S. Sentencing Comm'n Office of Policy Analysis, to Judge Hinojosa, Chair, U.S. Sentencing Comm'n, on Numbers in Post-Booker Sentencings: Data Extract on April 5, 2005 (Apr. 13, 2005), available at http://www.ussc.gov/sc_cases/Booker_041305.pdf (reporting post-Booker sentencing statistics, including a finding that in only 15.2% of cases, defendants received a government sponsored 5K1.1

---

[3] See Ellen Yaroshefsky, Cooperation with Federal Prosecutors: Experiences of Truth Telling and Embellishment, 68 Fordham L. Rev. 917, 919-20 (1999) (explaining that analyzing how prosecutors deal with cooperators "does not lend itself to traditional methods of scholarly study" and that "[b]y its nature, dealing with cooperators is dependent on a constellation of factors whose impact on the process is extremely difficult to analyze"); Linda Drazga Maxfield & John H. Kramer, United States Sentencing Commission, Substantial Assistance: An Empirical Yardstick Gauging Equity in Current Federal Policy and Practice 6 (1998), available at http://www.ussc.gov/publicat/5kreport.pdf [hereinafter Maxfield & Kramer, Substantial Assistance] (noting that when a Substantial Assistance Staff Working Group studied substantial assistance practices in the United States Attorneys' offices, the group learned that the DOJ did not maintain such information and that the U.S. Attorney's offices did not keep the information in a consistent, usable form).

sentence reduction for substantial assistance); Lisa M. Farabee, <u>Disparate Departures Under the Federal Sentencing Guidelines: A Tale of Two Districts</u>, 30 Conn. L. Rev. 569, 570, 603-22 (1998) (discussing the disparities in the way the District of Connecticut and the District of Massachusetts promoted sentencing departures).[4]  Nevertheless, even accepting the prosecutor's recommendation here -- a 75-month sentence -- I conclude that it is offset by other factors.

Milo's record over the past five years on release buttresses the Court's conclusions about his genuine remorse, his efforts to change his life, and the fact that he is not at all likely to re-offend.  The evidence suggests not merely that Milo "accepted responsibility" for his actions, and saved the government work in preparing and trying a case.  Rather, the evidence shows extraordinary contrition, far beyond the usual self-interested bargaining the Court has seen from cooperating defendants.[5]  The

---

[4] For example, the government recommendation for James Martorano, an individual accused in multiple murders, was 12 years.  <u>See</u> Shelley Murphy,<u> Hit Man Says He Killed Out of Loyalty to Family, Friends</u>, Boston Globe, Jan. 4, 2008, <u>available at</u> http://www.boston.com/news/local/articles/2008/01/04/hit_man_says_he_killed_out_of_loyalty_to_family_friends/.  For participation in a large marijuana distribution ring here, the government's recommendation was more than 6 years.

[5] On appeal, the Government argued that Milo's three-level Guidelines reduction for "acceptance of responsibility" already gives him credit for contrition.  But the First Circuit acknowledged the district court's concern that acceptance of responsibility is generally a contrivance, not necessarily coincident with real contrition.  "[O]ver 90 percent of drug traffickers who plead guilty get a two or three level adjustment, whether truly contrite and unlikely to re-offend or not."  <u>Milo</u>, 506 F.3d at 75 (citing U.S. Sentencing Commission, <u>2005 Sourcebook of Federal Sentencing Statistics</u>, tbl. 19).

ordinary pattern is this:  Yesterday, cooperating defendants were bargaining for drugs; today, they are bargaining for leniency. Nothing much has really changed in their lives.  Milo, however, approached cooperation much differently, providing some of the most substantial assistance this Court has seen from a defendant.

There have been no violations of the terms of Milo's release (since the initial positive drug test three years ago). Notwithstanding the government's appeal and the disappointment of the sentencing remand, Milo has continued with his charitable activities, his repayment of his obligations stemming from this offense, and his work.  And, although Milo's charitable activities are a discouraged factor in sentencing under the Guidelines, the Supreme Court's decision in United States v. Gall, 128 S. Ct. 586 (2007), suggests that the Guidelines' position is no bar to this Court's consideration of that evidence.[6]  Gall acknowledged that under an advisory guideline system, the district court can consider discouraged factors.  See id. at 601-02 (discussing the district court's consideration of Gall's age and immaturity at the time of the offense). Everything in this record suggests that Milo will not return to

---

[6] Indeed, even pre-Gall, the First Circuit recognized that such factors could be considered as part of the court's determination of whether there has been extraordinary rehabilitation.  See Milo, 506 F.3d at 75 & n.3.

criminal behavior and does not pose a danger to society. See 18 U.S.C. § 3553(a)(2)(B),(C).

Under these circumstances, a sentence of imprisonment would hardly qualify as one that is "sufficient but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Milo is doing everything that society would want a prison sentence to accomplish.

To be sure, the First Circuit had concerns about a "near zero" sentence in this case. Such a sentence, the Court concluded could be faulted a) for not deterring others (even if it would deter this individual), b) for not adequately reflecting the seriousness of the offense, c) for undermining public confidence in the enforcement of the law, 18 U.S.C. § 3553(a)(2)(A), because it would be "very hard for the public to understand." Milo, 506 F.3d at 76. Many of the Court's concerns, which were reflected in a number of cases post-Booker, have been addressed by Gall. Probation, as the Supreme Court underscored, does not mean that the defendant is not punished. Offenders on probation are "subject to several standard conditions that substantially restrict their liberty." 128 S. Ct. at 595. Milo's conditions included home detention and prohibited him from leaving the judicial district without the permission of the court or probation officer, required him to submit a monthly report to his probation officer, and required him to accept

visits by his probation officer at any time at home or elsewhere, in addition to a very, very substantial forfeiture order.

Nor is it the case that public confidence in the law is undermined when a non-violent drug dealer is subject to a substantial forfeiture of his ill-gotten gains, and substantial supervised release restrictions, even without a long prison term. In fact, studies have suggested that, while there was agreement between the Guidelines and the public in ranking the gravity of crimes, this consensus did not extend to the <u>length</u> of the sentence in an individual case, which is precisely the decision that judges must make.  As Ross and Berk note, "on the level of sentences given to individual vignettes, there was only a very modest amount of agreement between the sentences given by individual respondents and those prescribed by the guidelines." Peter H. Ross & Richard A. Berk, <u>Just Punishment: Federal Guidelines and Public Views Compared</u> 208 (1997).  According to one study, more than half of those incarcerated are serving time for offenses that, "according to public opinion surveys, the general public thinks are 'not very serious crimes.'"  Rachel Barkow, <u>Administering Crime</u>, 52 UCLA L. Rev. 715, 749  n.104 (2005) (citing William J. Chambliss, <u>Power, Politics and Crime</u> 6 (1999)).  Indeed, surveys have found public support for rehabilitation and alternatives to imprisonment.  <u>Id.</u> at 751.

And the more information that the public has about sentencing decisions, the less punitive they are.  Id.

In short, the information presented about Milo at the re-sentencing provide additional support for this Court's initial sentence -- that the concerns of 18 U.S.C. § 3553(a) support a sentence of time-served.  To be sure, the nature and circumstances of Milo's offense militate in favor of the sentence recommended by the government, other factors being equal.  But "other factors" are not equal here.  By all accounts, Milo's cooperation was extraordinary.  The sentence of time-served, with these supervised release conditions will surely deter Milo.  Meanwhile, the consequences of this prosecution -- costs measured by the forfeiture, by the supervised release conditions, and by the risks of Milo's cooperation -- will surely deter others.  Milo has no criminal history; and, looking forward, everything in this record suggests that there will be no recidivism.  He has built a life which he is not likely to undermine by any further criminal activities.

**SO ORDERED.**

Date:  December 31, 2008                    /s/ Nancy Gertner

**NANCY GERTNER, U.S.D.C.**